ROBERTS, J., for the Court:
 

 ¶ 1. A jury sitting before the Pike County Circuit Court found Ricky M. Jackson guilty of aggravated assault. The circuit court sentenced Jackson to twenty years in the custody of the Mississippi Department of Corrections (MDOC) with five years suspended and fifteen years to serve followed by five years of post-release supervision. Aggrieved, Jackson appeals and claims he received ineffective assistance of counsel because his trial attorney did not request a lesser-included-offense instruction on simple assault. Additionally, Jackson claims the jury’s verdict is contrary to the overwhelming weight of the evidence. Finding no error, we affirm.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. The events that set Jackson’s conviction into motion occurred on August 8, 2008, when Willie and Tomeka Hayes en
 
 *615
 
 countered Jackson in the Walmart store located in McComb, Mississippi. As Willie and Tomeka entered the store, Willie noticed Jackson in a corner of the entrance.
 
 [1]
 
 Willie and Tomeka went in separate directions after they went inside. A short time later, Willie and Jackson made eye contact. According to Willie, when he and Jackson made eye contact, Jackson “turned around abruptly and sprinted back toward! ][the] pharmacy.”
 

 ¶ 3. Willie met Tomeka in a different part of the store. Referring to Jackson, he told Tomeka that he had seen “old crazy Ricky.” Tomeka asked Willie whether he wanted to leave the store. Willie told her that he did not want to leave, but he attempted to be aware of Jackson’s whereabouts while they were both in the store.
 

 ¶4. According to Willie and Tomeka, while they were in the clothes section of the store, Jackson appeared from behind a clothes rack. Willie testified that Jackson “leaned over like he wanted to say something to me. And I gave him the benefit of the doubt.” Willie and Tomeka later testified that, without provocation, Jackson spit in Willie’s face and stabbed him in the face with a wooden stick.
 
 [2]
 
 Jackson walked away, got on his bicycle, and left the store.
 

 ¶ 5. Willie received medical attention from emergency room physician Dr. Brett Ferman. Dr. Ferman removed the stick that protruded from Willie’s right cheek. The record contains photographs of Willie with a stick, which appears to be a wooden skewer used for cooking, protruding from the area below his right eye. Dr. Ferman treated Willie with painkillers and antibiotics.
 

 ¶ 6. Jackson was arrested that same day. Jackson later testified at trial. He claimed that Willie attempted to spit on him and that he did not spit on Willie. Jackson also claimed that he did not stab Willie in the face with a wooden stick. According to Jackson, Willie attempted to hit him multiple times, but Jackson blocked each attempt. Jackson could not explain how a stick managed to become lodged in Willie’s face.
 

 ¶7. The jury found Jackson guilty of aggravated assault. The circuit court sentenced Jackson to twenty years in the custody of the MDOC with five years suspended and fifteen years to serve followed by five years of post-release supervision. Aggrieved, Jackson appeals.
 

 ANALYSIS
 

 I. ASSISTANCE OF COUNSEL
 

 ¶ 8. On direct appeal, Jackson claims he received ineffective assistance of counsel because his attorney did not request a simple-assault instruction. “While this Court may consider the merits of a claim of ineffective assistance of counsel raised for the first time on direct appeal, it is unusual to do so because ‘[w]e are limited to the trial court record in our review of the claim and there is usually insufficient evidence within the record to evaluate the claim.’”
 
 Wynn v. State,
 
 964 So.2d 1196, 1200 (¶ 9) (Miss.Ct.App.2007) (quoting
 
 Wilcher v. State,
 
 863 So.2d 776, 825 (¶ 171) (Miss.2003)). On direct appeal, we will reach the merits of a claim of ineffective assistance of counsel only where: “(1) the
 
 *616
 
 record affirmatively shows ineffectiveness of constitutional dimensions, or (2) the parties stipulate that the record is adequate to allow the appellate court to make the finding without consideration of the findings of fact of the trial judge.”
 
 Wilcher,
 
 863 So.2d at 825 (¶ 171) (citation omitted).
 

 ¶ 9. There is no mutual stipulation that the record is adequate to resolve Jackson’s claim that his attorney was ineffective because he did not request a simple-assault instruction. Accordingly, we must determine whether the record affirmatively demonstrates that Jackson was denied effective assistance of counsel. In so doing, we must determine whether Jackson’s representation was “so lacking in competence that it becomes apparent or should be apparent that it is the duty of the trial judge to correct it so as to prevent a mockery of justice.”
 
 Ransom, v. State,
 
 919 So.2d 887, 889 (¶ 9) (Miss.2005). To demonstrate a prima facie claim of ineffective assistance of counsel, Jackson must prove that: (1) his defense counsel’s performance was deficient, and (2) his defense counsel’s deficient performance was prejudicial to his defense.
 
 Strickland v. Washington,
 
 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984);
 
 Swington v. State,
 
 742 So.2d 1106, 1114 (¶ 22) (Miss.1999). Jackson bears the burden of proving both prongs of
 
 Strickland,
 
 and he must also overcome the rebuttable presumptions that his defense counsel’s conduct is within the wide range of reasonable conduct and that his defense counsel’s decisions were strategic.
 
 Edwards v. State,
 
 615 So.2d 590, 596 (Miss.1993) (citing
 
 Leatherwood v. State,
 
 473 So.2d 964, 969 (Miss.1985)). To rebut these presumptions, Jackson must demonstrate that, but for his defense counsel’s unprofessional errors, the outcome of his trial would have been different.
 
 Strickland,
 
 466 U.S. at 694, 104 S.Ct. 2052;
 
 Wynn,
 
 964 So.2d at 1200 (¶ 11).
 

 ¶ 10. In
 
 Ravencraft v. State,
 
 989 So.2d 437, 443 (¶ 34) (Miss.Ct.App.2008), Buddy John Ravencraft, who had been convicted of murder, argued that his defense counsel was ineffective because he did not request a lesser-included-offense instruction for manslaughter. This Court found no merit to that argument based on the rebuttable presumption that a defense counsel’s decisions are tactical.
 
 Id.
 
 To be precise, this Court held that “defense counsel could have strategically declined to request a manslaughter instruction based on the concept that, had the jury failed to convict Ravencraft of murder, there would have been no lesser-included offense by which the jury could convict Ravencraft. Under those circumstances, Ravencraft would have been acquitted.”
 
 Id.
 
 In a separate case, the Mississippi Supreme Court held that a claim that a defense attorney rendered ineffective assistance of counsel because he did not request lesser-offense instructions for manslaughter and mutilation failed because “trial counsel’s decision to not request a jury instruction falls under the category of trial tactics, which are not subject to review.”
 
 Neal v. State,
 
 15 So.3d 388, 406 (¶ 43) (Miss.2009) (quoting
 
 Smiley v. State,
 
 815 So.2d 1140, 1148 (¶ 31) (Miss.2002)).
 

 ¶ 11. The Mississippi Supreme Court has held that attorneys are allowed wide latitude regarding their trial strategy.
 
 Smiley,
 
 815 So.2d at 1148 (¶ 32). According to the supreme court:
 

 Judicial scrutiny of counsel’s performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel’s assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel’s defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance
 
 *617
 
 requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel’s challenged conduct, and to evaluate the conduct from counsel’s perspective at the time. The right to effective counsel does not entitle the defendant to have an attorney who makes no mistakes at trial. The defendant just has a right to have competent counsel.
 

 Id.
 
 (internal citations omitted).
 

 ¶ 12. Considering the authority discussed above, we do not find ineffectiveness of constitutional dimensions. Accordingly, we are directed to withhold considering the merits of Jackson’s claim on direct appeal that he received ineffective assistance of counsel. Jackson may raise his claim in a properly-filed motion for post-conviction relief if he so chooses.
 

 II. WEIGHT OF THE EVIDENCE
 

 ¶ 13. Jackson claims the jury’s verdict is contrary to the overwhelming weight of the evidence. In so doing, Jackson claims the circuit court erred when it denied his motion for a new trial. We are mindful that, as we review the circuit court’s decision to deny a motion for a new trial, this Court “will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.”
 
 Bush v. State,
 
 895 So.2d 836, 844 (¶ 18) (Miss.2005). The supreme court has further instructed that, when reviewing a trial court’s decision to deny a motion for a new trial:
 

 the court sits as a thirteenth juror. The motion, however, is addressed to the discretion of the court, which should be exercised with caution, and the power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict. However, the evidence should be weighed in the light most favorable to the verdict. A reversal on the grounds that the verdict was against the overwhelming weight of the evidence, unlike a reversal based on insufficient evidence, does not mean that acquittal was the only proper verdict. Rather, as the “thirteenth juror,” the court simply disagrees with the jury’s resolution of the conflicting testimony. This difference of opinion does not signify acquittal any more than a disagreement among the jurors themselves. Instead, the proper remedy is to grant a new trial.
 

 Id.
 
 (footnote and internal citations and quotations omitted).
 

 ¶ 14. Willie and Tomeka both testified that Jackson approached Willie and, unprovoked, spit in Willie’s face and then stabbed him in the face with a wooden stick. Dr. Ferman, the emergency room physician who treated Willie, testified that White’s injury was “severe” and that it could have been “potentially fatal.” Dr. Ferman based his testimony on the fact that the wound was near Willie’s “orbital rim, the bottom of [the] eye socket.” Dr. Ferman went on to testify that such an injury could have “caused instant blindness” and that “it could have been fatal.”
 

 ¶ 15. Viewing the evidence in the light most favorable to the verdict, we do not find that it would sanction an unconscionable injustice to allow the verdict to stand. Accordingly, we find that the circuit court acted within its discretion when it denied Jackson’s motion for a new trial. It follows that we find no merit to this issue.
 

 ¶ 16. THE JUDGMENT OF THE PIKE COUNTY CIRCUIT COURT OF CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH FIVE YEARS SUSPENDED AND FIFTEEN YEARS TO
 
 *618
 
 SERVE FOLLOWED BY FIVE YEARS OF POST-RELEASE SUPERVISION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO PIKE COUNTY.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE AND MAXWELL, JJ., CONCUR. CARLTON, J., NOT PARTICIPATING.
 

 [1]
 

 . Willie testified that he and Jackson had been friends at one time. Although the record is clear that their friendship had deteriorated, it is not clear as to the reason or reasons why their friendship had deteriorated.
 

 [2]
 

 . The record contains photographs of Willie with what appears to be a wooden cooking skewer used for cooking protruding from the area of his cheek below his right eye.