MYERS, P.J.,
 

 for the Court:
 

 ¶ 1. Johnny McCullough was convicted of two counts of gratification of lust for the touching of “Jane,” his step-granddaughter.
 
 [1]
 
 The jury acquitted McCullough of five other counts alleging that he had touched two of his natural granddaughters. The Union County Circuit Court sentenced McCullough to fifteen years’ imprisonment for each count, with the sentences to run concurrently. McCullough now appeals, arguing that the jury’s verdict is against the overwhelming weight of the evidence and that he received constitutionally ineffective assistance of counsel at trial.
 

 FACTS
 

 ¶ 2. McCullough was born on December 6, 1945, and he was sixty-three years of age at the time of trial. McCullough, his wife, and his two sons and their families lived in three homes on the same sixty-nine-acre tract in Union County, Mississippi. McCullough’s sons, Billy and Jamie, each had several children from multiple marriages. McCullough and his sons were truck drivers, though Billy and Jamie ap
 
 *1208
 
 parently worked other jobs at times. McCullough was a Baptist minister and had preached at a local church from 1981 to about 1998, when McCullough began preaching on a local radio station. At times, McCullough and his wife would care for their grandchildren and step-grandchildren.
 

 ¶ 3. Jane was Jamie’s stepdaughter, a child of his ex-wife, Billie Jean. Jane was sixteen years of age at the time of trial. Jamie had raised Jane since she was two or three years old, and after Billie Jean and Jamie were divorced in late 2006,
 
 [2]
 
 Jamie kept custody of Jane and his three children by Billie Jean. In July 2007, Jamie married Cynthia “Cindy” Chandler, but by some time that year, they had separated. Though they apparently reconciled at times, Jamie and Cindy were later divorced, and shortly thereafter Jamie married Paula, his brother Billy’s ex-wife.
 

 ¶ 4. The allegations against McCullough came to light after McCullough took “Ashley,” Cindy’s daughter (Jamie’s stepdaughter) on a trucking haul to Miami, Florida, in May 2008. The trip was to take two or three days. Some time during the trip, Ashley called Cindy and told her that McCullough had touched her breasts, undone her pants, and licked her vagina. She stated that this had happened in the cabin of the truck at a Walmart parking lot. McCullough had said it was a game and had warned her not to tell anyone. Ashley and Cindy spoke with Jamie,
 
 [3]
 
 and the parents agreed that Ashley would have to finish out the trip, as Ashley didn’t know exactly where she was and they had no safe way to get her away from McCullough. They instructed Ashley to resist any further advances by bundling up in a sheet. Cindy testified that she frequently called Ashley and McCullough during the remainder of the trip but was careful not to let McCullough know that she was aware he had touched her daughter.
 

 ¶ 5. While Ashley was still on the road with McCullough, she told her mother that she had spoken to “Brittany,” one of her stepsisters, on the phone, and Brittany had told her that McCullough had touched her as well. Brittany was Jamie’s and Billie Jean’s daughter. She was a year younger than Ashley, and the two were close friends. At the time, Brittany was staying at McCullough’s home. She told Ashley and Cindy that McCullough began touching her in late 2007, when Cindy and Jamie had separated. Cindy and Jamie also spoke to Jane, who reported that McCullough had touched her while purporting to pray for her. Jane stated that McCullough would touch her breasts and vagina and rub them with what he called “praying oil.” She stated that this had been going on since she was about nine years of age; Jane was fifteen when she reported the abuse in May 2008.
 

 ¶ 6. “Courtney,” Billy and Paula’s daughter, also accused McCullough of touching her while purporting to pray for her. She stated that McCullough had started fondling her breasts when she was twelve or thirteen years of age. At trial, Courtney was only able to remember one instance where McCullough had touched her vagina, while she accompanied him on a trucking trip to North Carolina in the summer of 2007.
 
 [4]
 

 
 *1209
 
 ¶ 7. Jane, Ashley, Brittany, and Courtney were interviewed on July 22, 2008, by Angie Floyd, a social worker and forensic interview specialist at the Family Resource Center in Tupelo. Each of the girls disclosed the abuse in an account substantially similar to her testimony at trial. Floyd determined that each of the children’s accounts were consistent with victims of child sexual abuse, and she found no evidence of coaching. Floyd also interviewed “Debra” and “Ellen,” who did not disclose any abuse. Debra, who was eight years of age at the time of the interview, is Jamie and Billie Jean’s youngest child. Ellen, Billy and Paula’s oldest daughter, was sixteen at the time of the interview. She had been living with McCullough and his wife since her parents’ divorce, but she denied that McCullough had touched her. Video recordings of the interviews were introduced into evidence at the trial.
 

 ¶ 8. The theory of McCullough’s defense was that Billie Jean and Cindy, his son Jamie’s ex-wives, had put the children up to accusing McCullough to punish Jamie for adultery and to get Billie Jean custody of her children. McCullough also brought out testimony suggesting that the children were angry with Jamie for keeping a strict household and for marrying Paula, his brother’s ex-wife.
 

 ¶ 9. McCullough testified in his own defense. He denied touching any of the girls, and he averred that he had never taken any child with him while driving his truck. He stated that carrying passengers was against company policy and that he would have been fired if he had carried a child with him on long trips. McCullough admitted that he sometimes prayed for the children, but he averred that his wife had always been present. He testified that while praying, he would touch them on the head only. McCullough’s wife and his son, Jamie, gave supporting testimony.
 

 ¶ 10. McCullough was tried on seven counts of gratification of lust. He was acquitted of five counts relating to the fondling of Brittany and Courtney and convicted of two counts for touching Jane. This appeal followed.
 

 DISCUSSION
 

 1. Weight of the Evidence; Inconsistent Verdicts
 

 ¶ 11. McCullough argues that the jury’s verdict is against the overwhelming weight of the evidence.
 

 ¶ 12. “The jury is charged with the responsibility of weighing and considering conflicting evidence, evaluating the credibility of witnesses, and determining whose testimony should be believed.”
 
 Smith v. State,
 
 8 So.3d 815, 818 (¶ 13) (Miss.Ct.App.2009) (quoting
 
 Ford v. State,
 
 737 So.2d 424, 425 (¶ 8) (Miss.Ct.App.1999)). The Mississippi Supreme Court has discussed appellate review of the weight of the evidence supporting a jury’s verdict, stating:
 

 When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.... However, the evidence should be weighed in the light most favorable to the verdict. A reversal on the grounds that the verdict was against the overwhelming weight of the evidence, unlike a reversal based on insufficient evidence, does not mean that acquittal was the only proper verdict. Rather ... [the reviewing] court simply disagrees with the jury’s resolution of the conflicting testimony.
 
 *1210
 
 This difference of opinion does not signify acquittal any more than a disagreement among the jurors themselves. Instead, the proper remedy is to grant a new trial.
 

 Bush v. State,
 
 895 So.2d 836, 844 (¶ 18) (Miss.2005) (internal citations and quotations omitted). The court has cautioned that a challenge to the weight of the evidence “is addressed to the discretion of the court, which should be exercised with caution, and the power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict.”
 
 Id.
 
 (quoting
 
 Amiker v. Drugs For Less, Inc.,
 
 796 So.2d 942, 947 (¶ 18) (Miss.2000)).
 

 ¶ 13. On appeal, McCullough makes two distinct arguments under this issue. The first is largely a rehashing of the theory of his defense at trial: that Jane was induced to falsely accuse him by Cindy and Billie Jean. McCullough offers nothing new; he simply points out that there was conflicting testimony as to whether he committed the alleged acts. This is insufficient, as “[t]he jury is the sole judge of the weight of the evidence and the credibility of the witnesses.”
 
 Nix v. State,
 
 8 So.3d 141, 146 (¶ 26) (Miss.2009) (quoting
 
 Mohr v. State,
 
 584 So.2d 426, 431 (Miss.1991)).
 

 ¶ 14. In his second argument, McCullough appears to urge that the jury’s verdicts were inconsistent. We do not agree. Each of the girls testified to separate events, and each was subjected to thorough cross-examination regarding her particular allegations. The State’s theory may very well have been that each victim was telling the truth, but it would not be inconsistent for the jury to find Jane’s testimony credible while it harbored reasonable doubts as to whether the State had proved every element of the offense regarding Brittany’s and Courtney’s allegations. As the supreme court stated in
 
 Groseclose v. State,
 
 440 So.2d 297, 300 (Miss.1983):
 

 Jurors are permitted, indeed have the duty, to resolve the conflicts in the testimony they hear. They may believe or disbelieve, accept or reject the utterances of any witness. No formula dictates the manner in which jurors resolve conflicting testimony into finding of fact sufficient to support their verdict. That resolution results from the jurors hearing and observing the witnesses as they testify, augmented by the composite reasoning of twelve individuals sworn to return a true verdict. A reviewing court cannot and need not determine with exactitude which witness or what testimony the jury believed or disbelieved in arriving at its verdict. It is enough that the conflicting evidence presented a factual dispute for jury resolution.
 

 ¶ 15. Even if we were to find the verdicts inconsistent, which we do not, we note that “inconsistent or even contradictory verdicts are not, in and of themselves, reasons to overturn a criminal conviction.”
 
 Dubose v. State,
 
 22 So.3d 340, 352 (¶ 38) (Miss.Ct.App.2009). All that is required to support an inconsistent or contradictory verdict is that the evidence was sufficient to support the counts on which a conviction was returned.
 
 Id.
 
 That is beyond dispute in this case.
 

 ¶ 16. After a thorough review of the record, we are satisfied that the jury’s verdicts are not against the overwhelming weight of the evidence. This issue is without merit.
 

 2. Ineffective Assistance of Counsel
 

 ¶ 17. In his final issue, McCullough argues that he received constitutionally ineffective assistance of counsel at trial. He cites only a single instance of allegedly ineffective conduct: McCullough
 
 *1211
 
 alleges that his attorney possessed an audio recording of Brittany stating, at Jamie’s urging, that Cindy had “forced” her and the other girls to accuse McCullough. McCullough alleges that his attorney was ineffective for failing to use this recording at trial.
 

 ¶ 18. McCullough placed a compact disc containing this recording in his record excerpts, and he attached an affidavit executed by Jamie that describes the circumstances of the recording and its use at trial. But McCullough admits that neither the recording nor the affidavit are actually part of the record on appeal. This Court is limited to the trial court record in our review of the claim.
 
 Jackson v. State,
 
 42 So.3d 613, 615 (¶ 8) (Miss.Ct.App.2010). Of course, McCullough cannot make them part of the record by simply attaching copies to his briefs filed with this Court. Our supreme court had stated that “we must decide each case by the facts shown in the record, not assertions in the brief, however sincere counsel may be in those assertions. Facts asserted to exist must and ought to be definitely proved and placed before us by a record, certified by law; otherwise, we cannot know them.”
 
 Mason v. State,
 
 440 So.2d 318, 319 (Miss.1983).
 

 ¶ 19. Mississippi Rule of Appellate Procedure 22(b) states:
 

 Issues which may be raised in post-conviction proceedings may also be raised on direct appeal if such issues are based on facts fully apparent from the record. Where the appellant is represented by counsel who did not represent the appellant at trial, the failure to raise such issues on direct appeal shall constitute a waiver barring consideration of the issues in post-conviction proceedings.
 

 “Where the record is insufficient to support a claim of ineffective assistance, the appropriate conclusion is to deny relief, preserving the defendant’s right to argue the same issue through a petition for post-conviction relief.”
 
 Wynn v. State,
 
 964 So.2d 1196, 1200 (¶ 9) (Miss.Ct.App.2007) (internal quotations omitted). We cannot address this ineffective assistance claim on direct appeal. McCullough can raise it in a motion for post-conviction relief, if he chooses to do so. We therefore deny relief on this issue without prejudice.
 

 ¶ 20. THE JUDGMENT OF THE CIRCUIT COURT OF UNION COUNTY OF CONVICTION OF COUNT IV, GRATIFICATION OF LUST, AND SENTENCE OF FIFTEEN YEARS; AND COUNT V, GRATIFICATION OF LUST, AND SENTENCE OF FIFTEEN YEARS, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH THE SENTENCES TO RUN CONCURRENTLY, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., LEE, P.J., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR.
 

 [1]
 

 . We will use fictitious names throughout this opinion to protect the identity of minor victims of sexual abuse.
 

 [2]
 

 . Jamie actually testified his divorce from Billie Jean was in December 2007, but this date is inconsistent with his testimony and others. It appears to have been a mistake.
 

 [3]
 

 . In his testimony at trial, Jamie denied that this conversation had occurred. He testified instead that his father had never taken any children on trips like the ones described.
 

 [4]
 

 .This ultimately led to an amendment of the indictment to conform to the proof offered at
 
 *1209
 
 trial, as the original indictments had specifically alleged vaginal contact in Mississippi.