MAXWELL, J.,
for the Court:
¶ 1. Kizzetta Nicole McClendon was convicted of two counts of credit-card fraud after using a stolen debit card to purchase clothing from two stores in Carthage, Mississippi. Based on her nine prior convictions — one for grand larceny, three for uttering a forgery, and five for credit-card fraud — she was sentenced to three years’ imprisonment on each count, to be served consecutively.[1] After reviewing McClen-don’s numerous assignments of error, we find the majority of her claims are either inappropriate for direct appeal, allege matters outside the record, or- lack supporting authority.[2] We limit our review to the several issues that are properly before us, including her challenges to (1) the sufficiency of the evidence, (2) officer testimony, (3) the denial of a timely initial appearance, (4) the denial of her motion for a preliminary hearing, and (5) her alleged speedy-trial violation. Finding no reversible error as to any of these issues, we affirm.
*712 Background Facts
¶ 2. McClendon was arrested after she used a stolen debit card to make separate clothing purchases at two stores. When making the purchases, she signed the sales receipts using the victim’s name. An employee from each store identified McClen-don, both in a photographic lineup and at trial, as the person who used the stolen card. A Carthage police officer testified that when he stopped McClendon’s vehicle she presented him -with false identification. The officer also discovered the merchandise from the two stores in her car. A Leake County jury convicted McClendon on both counts of credit-card fraud. She now appeals.
Discussion
I. Sufficiency of the Evidence
¶ 3. McClendon’s first argument focuses on the sufficiency of the evidence supporting her convictions. She insists the State failed to establish a prima facie case that she violated Mississippi Code Annotated section 97-19-21(1) (Rev.2006), because the State used the word credit card in the indictment when the proof showed the im-permissibly used access device was actually a debit card.
¶ 4. When reviewing a challenge to the sufficiency of the evidence, “the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Bush v. State, 895 So.2d 836, 843 (¶ 16) (Miss.2005) (quoting Jackson v. Virginia, 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).
¶ 5. While the crimes prohibited by section 97-19-21 are commonly referred to as “credit-card fraud,” a quick review of this statute reveals a number of different ways to violate this code provision and a variety of methods to charge such violations.[3] Here, the State proceeded under the portion of subsection (1) that makes it “unlawful for any person, with intent to defraud the cardholder [or] issuer ... (b) to obtain money, goods, property, services or anything else of value ... (iii) by representing that he has been authorized to use the credit card or credit card number.” Miss.Code Ann. § 97 — 19—21 (l)(b)(iii).
¶ 6. McClendon does not take issue with the indictment’s charging language, nor does she argue that the State failed to allege a cognizable offense.[4] Instead, she *713 claims the charged access device, a “credit card,” which has traditionally been viewed as a device or card “used to obtain items on credit,” differs from a “debit card” — the particular instrumentality used in both purchases — which is generally thought of as “a card used to pay for purchases by electronic transfer from the purchaser’s bank account.”[5] As McClendon sees it, because most of the trial testimony referenced the card as a debit card, the State failed to prove she used a credit card, as charged in both counts. We disagree.
¶ 7. While these general distinctions perhaps matter in some contexts, we find they are immaterial here as the term “credit card” is broadly defined by Mississippi Code Annotated section 97-19-9(b) (Rev. 2006) to include access devices commonly referred to as “debit cards.” Under section 97-19-9(b), which expressly applies to all manners of “False Pretenses and Cheats” found in sections 97-19-5 through 97-19-29, a “credit card” is defined as:
any instrument or device, whether known as a credit card, credit plate or by any other name, issued with or without fee by an issuer for the use of the cardholder or one authorized by him in obtaining money, goods, property, services or anything else of value on credit or in consideration of an undertaking or guaranty by the issuer of a payment of a check or draft drawn by the cardholder or one authorized by him, and shall include a card issued by a financial institution to be used in operating an automatic unmanned cash dispensing machine.
Miss.Code Ann.' § 97-19-9(b) (emphasis added).
¶ 8. At trial, the store employees testified that McClendon signed receipts in both stores, as is customary in credit-card transactions. And several witnesses referred to the card as a “credit card.” However, the bulk of the testimony, including that from the victim cardholder, described the Citizens National Bank card as a debit card. From our review it appears the' card was a debit card with an accompanying credit-card function. But regardless of the chosen label, the fraudulently used card certainly falls within section 97-19-9(b)’s broad definition of “credit card.”
¶ 9. Further, McClendon’s defense did not hinge on her insistence that the State failed to prove a violation under section 97-19-21(1) because she used a stolen debit card, not a credit card. Rather, McClendon argued the State failed to prove she was the actual person who used the stolen card. Viewing the evidence in the light most favorable to the State, as we must, we find sufficient evidence supports the two charges under section 97-19-21(1). Thus, the trial judge properly denied McClendon’s motion for a directed verdict, request for a peremptory instruction, and post-trial motion for a judgment notwithstanding the verdict.
II. Hearsay Objection
¶ 10. McClendon next suggests the trial judge admitted hearsay testimony about attempts to recover the stolen card. McClendon objected when a Carthage Police Department officer began to testify that McClendon had “crushed” the card in her hand and “flushed it” down the toilet. She claimed the officer did not witness this and had no personal knowledge about the disposal or recovery of the card. At this point, a somewhat confusing exchange en *714 sued between defense counsel, the State, and the trial judge. The defense claimed the State was forcing hearsay evidence that another person witnessed. And the State seemed perplexed over the objection, not understanding the nature of the objection or how to properly proceed, which the defense suggests was feigned. After a bit of back and forth between the State and defense counsel, the judge, having initially allowed the testimony, quickly refocused and instructed the State to “[a]sk the question again.” The State complied, asking the officer: “Was the credit card recovered?” And the judge then instructed the officer to “answer the question.” The officer did indeed answer — responding that the card was never recovered. At that point, McClendon’s attorney clarified, “[w]e have no objection to that your hon- or.”
¶ 11. From this exchange, we find that, even if the officer’s initial testimony was hearsay, it appears it was cleared up to McClendon’s satisfaction. To the extent it was not remedied, we find the weight of the overall evidence against McClendon heavily outweighs the harm done by allowing the officer’s initial testimony. Thus, the admission of the initial testimony was at most harmless error. See Veasley v. State, 735 So.2d 432, 437 (¶ 17) (Miss.1999).
III. Initial Appearance
¶ 12. McClendon next suggests that a six-day delay between her arrest and initial appearance, during which she was not allowed to use the telephone, prejudiced her defense and is reversible error.[6]
¶ 13. Under Uniform Rule of Circuit and County Court 6.03, “every person in custody shall be taken, without unnecessary delay and within 48 hours of arrest, before a judicial officer ... for an initial appearance.” While the rule provides for a timely initial appearance, the failure to provide an initial appearance for the accused within forty-eight hours does not itself mandate reversal of his or her convictions, where there is no resulting prejudice. Johnson v. State, 749 So.2d 306, 308 (¶¶ 4-5) (Miss.Ct.App.1999) (holding three-week delay between arrest and initial appearance did not warrant reversal of conviction because no prejudice resulted). The record does not indicate why McClen-don did not appear before a judge for six days after her arrest. But even assuming this delay was improper, and her allegation that she could not use the phone is true, she offers no proof of how this prejudiced her trial defense. Without any proof of prejudice to her defense, we find the delay between her arrest and initial appearance does not mandate reversal of her convictions.
IY. Request for Preliminary Hearing
¶ 14. McClendon also takes issue with the trial court’s denial of her motion for a preliminary hearing. Though she had already been indicted on November 2, 2010, McClendon sought a preliminary hearing almost five months later, on March 31, 2011. The trial judge dismissed her request.
¶ 15. “[T]he fundamental purpose of a preliminary hearing is to determine whether there is probable cause to believe that an offense has been committed and whether the defendant committed it.” Mayfield v. State, 612 So.2d 1120, 1129 *715 (Miss.1992) (internal quotations omitted). After a grand jury has met and found that probable cause exists, there is no further need for a preliminary hearing. Id. Because McClendon had been indicted, there was already a finding of probable cause on both charges. Therefore, we find the trial judge properly dismissed her request for a post-indictment preliminary hearing.
V. Right to a Speedy Trial
¶ 16. McClendon finally argues the delay between her arrest and trial violated her right to a speedy trial.[7] “There is no set amount of time within which a defendant must be brought to trial.” Stark v. State, 911 So.2d 447, 449 (¶ 6) (Miss.2005). When a defendant has alleged a speedy-trial violation, we consider the length of the delay, the reason for the delay, whether the defendant asserted the right, and any prejudice to the defendant to determine whether her right has been violated. Id. at 450 (¶ 7) (citing Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972)).

A. Length of Delay

¶ 17. Any delay exceeding eight months is presumptively prejudicial, calculating the time elapsed begins with the defendant’s arrest, indictment, or information. Id. (holding the “right to a speedy trial attaches when a person has been accused”). McClendon was arrested the day of the fraudulent purchases, February 17, 2010. Her trial began September 6, 2011. So the eighteen-and-a-half month delay is presumptively prejudicial, requiring us to consider the remaining factors. See id. at (¶ 10).
id. Reason for Delay
¶ 18. When the delay is presumptively prejudicial, the burden shifts to the State to show cause for the delay. Id. at (¶ 11). This court must decide whether the delay should be charged to the State or the defendant. Id.
¶ 19. After her arrest in February 17, 2010, McClendon was immediately sent to the Central Mississippi Corrections Facility to serve the remainder of an unrelated sentence. She was not indicted for her present crimes until November 2, 2010. So the eight-and-a-half months between accusation and indictment are attributable to the State.
¶ 20. Once indicted, McClendon’s trial was first set for January 10, 2011. Due to a crowded docket, McClendon’s case could not be tried and was reset for May 4, 2011. Because the United States Supreme Court has reasoned that overcrowded courts are considered more of a neutral reason for delay, we find this portion of the delay weighs only minimally against the State. See Barker, 407 U.S. at 531, 92 S.Ct. 2182.
¶21. The remainder of the delay is attributable to McClendon. In March 2011, she sought to remove her court-appointed counsel, and on May 4, 2011, the day her trial was scheduled to begin, she moved for a continuance. She also made an ore tenus motion for another continuance the day of her September 6, 2011 trial, which was denied.
¶ 22. Because the delay was attributable to both the State and McClendon, as well as reasons outside the State’s control, we find this factor weighs only minimally against the State.

*716
C. Assertion of Right to Speedy Trial

¶ 23. While McClendon filed a motion in December 2010 to dismiss for failure to provide a speedy trial, she did not request or move for a speedy trial until January 27, 2011. See Stark, 911 So.2d at 452 (¶ 27) (holding motion to dismiss for failure to provide a speedy trial is not a request or assertion of right to speedy trial). At no time between her February 17, 2010 arrest and January 2011 — while McClen-don was serving time for unrelated crimes — did she assert her right to a speedy trial. And by the time McClendon did her assert her right, she was also simultaneously asking for continuances. We find this factor weighs in favor of the State.

D. Prejudice to the Defendant

¶ 24. We consider three interests when determining if a defendant has been prejudiced by a delay — (1) the prevention of oppressive pretrial incarceration, (2) the minimalization of anxiety and concern of the accused, and (3) the limitation of possible impairments to the defense. Stark, 911 So.2d at 452-53 (¶ 28). “The last interest is the most important and, if violated, is the most prejudicial to the defendant.” Id. at 453 (¶ 28) (citing Barker, 407 U.S. at 532, 92 S.Ct. 2182).
¶ 25. Regarding the first interest, while McClendon was incarcerated from February 2010 to February 2011, it was for an unrelated conviction. So she was not prejudiced by this factor. McClendon’s focus is on the second interest. She alleges the delay caused her significant stress and anxiety, which she claims impacted her defense. But our supreme court has held that “anxiety alone does not amount' to prejudice worthy of reversal.” Duplantis v. State, 708 So.2d 1327, 1336 (¶ 25) (Miss.1998).
¶26. What McClendon fails to show is how the delay impacted the third and most important interest. See Barker, 407 U.S. at 532, 92 S.Ct. 2182. “Generally, proof of prejudice entails the loss of .evidence, death of witnesses, or staleness of an investigation.” Sharp v. State, 786 So.2d 372, 381 (¶ 19) (Miss.2001). McClen-don has made no assertion that “any evidence, potential witness, or case theory ... escaped [her] reach because of the delay.” Stark, 911 So.2d at 453 (¶ 31). McClendon somewhat confusingly asserted at trial and on appeal that she was not provided access to certain physical evidence prior to trial. But she is not claiming this evidence, which was introduced at trial, disappeared during and because of the delay. Also, in a separate argument in her pro se brief, she also alleges the State erred by choosing to call certain law enforcement officers — and not others, who no longer worked on the police force — to testify against her. But in her speedy-trial argument, McClendon does not claim she was unable to call these other investigators or interview them before trial because of the delay. So there is no basis to find McClendon’s defense was impaired by the delay. As a result, we find this factor weighs against McClendon.
¶ 27. Because the length-and-reason-for-delay factors, which slightly favor McClendon, are neutralized by the assertion-of-right factor, which favors the State, we find McClendon’s failure to show any resulting prejudice to be the determining factor and conclude McClendon’s right to a speedy trial was not violated.
¶ 28. THE JUDGMENT OF THE LEAKE COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I, CREDIT-CARD FRAUD, AND SENTENCE OF THREE YEARS, AND COUNT II, CREDIT-CARD FRAUD, AND SENTENCE OF THREE YEARS, WITH *717 SENTENCES TO RUN CONSECUTIVELY, BOTH IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AND FURTHER SENTENCE AS A HABITUAL OFFENDER, WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LEAKE COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON, FAIR AND JAMES, JJ., CONCUR.

. McClendon was convicted of violating Mississippi Code Annotated section 97-19-21 (Rev.2006). While the first violation of section 97-19-21 is a misdemeanor if the goods procured are less than $100, each subsequent violation is a felony punishable by up to three years in prison, regardless of the value of the goods. Further, because of her previous felony convictions, McClendon was a habitual offender under Mississippi Code Annotated section 99-19-81 (Rev.2007) and must serve the maximum prison sentence, without reduction or suspension, and is not eligible for parole.

. McClendon is represented on appeal by court-appointed counsel, who filed a brief on her behalf. McClendon also filed a brief pro se. See M.R.A.P. 28(b). In addition to the assignments of error we address, McClendon also asserts in her separate pro se brief: (1) ineffective assistance of counsel, (2) improper warrants for her arrest, (3) failure by the State to allow discovery, (4) juror misconduct, (5) perjury by a police officer, and (6) perjury by an Assistant District Attorney. We find McClendon's ineffective-assistance-of-counsel claim is more appropriate for a post-conviction relief petition, as there is insufficient evidence in the record to address her claim. See Aguilar v. State, 847 So.2d 871, 878 (¶ 17) (Miss.Ct.App.2002). We do not review these remaining assignments of error because McClendon either waived them by failing to preserve the issue at trial, or she does not cite any evidence in the record or legal authority in support. See Byrom v. State, 863 So.2d 836, 853 (¶ 35) (Miss.2003); see also M.R.A.P. 28(b) (requiring issues raised in pro se supplemental brief in criminal appeal to "be based on the record”). Specifically,' we note that the warrants and affidavits, which McClendon attached to her pro se brief, are not part of the trial record and, thus, outside of our review. See McCullough v. State, 47 So.3d 1206, 1211 (¶ 18) (Miss.Ct.App.2010) (holding defendant could not make documents part of trial record “by simply attaching copies to his briefs filed with this Court”).

. Under section 97-19-21:
(1) It is unlawful for any person, with intent to defraud the cardholder, the issuer, a person or organization providing money, goods, property, services or anything else of value, or any other person, (a) to use a credit card or credit card number obtained or retained in violation of Sections 97-19-5 to 97-19-29, or a credit card which he knows is forged, for the purpose of obtaining money, goods, property, services or anything else of value, or (b) to obtain money, goods, property, services or anything else of value (i) by representing without the consent of the cardholder that he is the holder of a specified card, or (ii) by representing that he is the holder of a card when he has reason to know that such card has not in fact been issued, or (iii) by representing that he has been authorized to use the credit card or credit card number.
(2) It is unlawful for any person, with intent to defraud the cardholder or issuer of a credit card used in the operation of an automatic unmanned cash dispensing machine, to use such card for the purpose of obtaining money from such machine.

. Both counts one and two of the indictment traced the specific language of section 97-19-21(1), charging that McClendon
did willfully, unlawfully and feloniously with intent to defraud [the cardholder] and Citizens National Bank, obtain from [J. Blockers Clothiers (Count One) and Mirbu's Store (Count Two) ], goods of a value of less than ... ($100), by representing to [the store] that she had been authorized to use a *713 Citizens National Bank credit card issued to [the cardholder], contrary to and in violation of Section 97 — 19—21(1)[.]

. Quotes are taken from McClendon’s brief.

. We note McClendon supports this argument, raised in her pro se brief, by attaching to her brief a "certificate of initial appearance” that is not part of the record. See McCullough, 47 So.3d at 1211 (¶ 18). As the State concedes in its brief that McClendon made her initial appearance on February 23, 2010, after being arrested on February 17, 2010, we review the merits of this assignment of error.

. "The Sixth and Fourteenth Amendments to the United States Constitution, along with Article 3, Section 26 of the Mississippi Constitution, guarantee a defendant the right to a speedy trial." Stark v. State, 911 So.2d 447, 449 (¶ 6) (Miss.2005) (citations omitted).