929 So.2d 365 (2006)
Rufus Darwn McFADDEN, II, Appellant
v.
STATE of Mississippi, Appellee.
No. 2004-KA-01306-COA.
Court of Appeals of Mississippi.
February 7, 2006.
Rehearing Denied May 23, 2006.
*366 William Mitchell Moran, attorney for appellant.
Office of the Attorney General by W. Daniel Hinchcliff, attorney for appellee.
*367 Before LEE, P.J., IRVING and CHANDLER, JJ.
CHANDLER, J., for the Court.
¶ 1. Rufus Darwn McFadden, II, was convicted of murder. McFadden appeals, raising the following issues:
I. WHETHER THE COURT ERRED IN REFUSING TO FURNISH AN EXPERT WITNESS FOR THE DEFENDANT
II. WHETHER THE COURT ERRED IN REFUSING TO PROVIDE FUNDS FOR AN EXPERT
III. WHETHER THE COURT ERRED IN OVERRULING A MOTION FOR A CONTINUANCE
¶ 2. Finding no error, we affirm.

FACTS
¶ 3. On Saturday, January 17, 2004, Monica Collum went to work and left her four children, including her two-year-old daughter, Ariana Farley, with her live-in boyfriend, Rufus Darwn McFadden, II. While Collum was at work, McFadden called her and told her that Ariana had fallen off a bicycle and bumped her head, but that she was fine. When Collum came home, she found Ariana unresponsive with glassy eyes and a swollen head. Collum rushed Ariana to Leake Memorial Hospital, where the doctor told Collum that Ariana would have to go to the University of Mississippi Medical Center ("UMC") in Jackson. McFadden and Collum followed Ariana to Jackson.
¶ 4. While McFadden and Collum were in the waiting room at UMC, Deputy Sheriff Mike Freeny of the Leake County Sheriff's Department and Debra Duplessis, a social worker, arrived from the sheriff's office. McFadden told Officer Freeny and Duplessis that Ariana had fallen off a bicycle and that her neck landed on the pedal. Collum noted that this story was inconsistent with what McFadden had told her when he called her, since McFadden had told Collum that Ariana landed on her back.
¶ 5. Collum was told that Ariana was dead when she arrived at UMC. She was officially pronounced dead the following Monday.
¶ 6. On January 20, 2004, McFadden was detained at the Leake County Correctional Facility. He was read his Miranda rights and waived his right to remain silent. After he waived his rights, he stated that he was in his bedroom when he heard a loud noise. He did not react to the noise immediately, but when he checked on the children ten minutes later he saw Ariana lying on the floor. McFadden told Ariana to go back to the living room with her brothers, and when she walked she started staggering. McFadden picked her up and asked her if she was okay. He placed Ariana on the bed, where she remained until Collum came home.
¶ 7. On January 26, 2004, McFadden was in Jackson for the purpose of taking a polygraph test. After he took the polygraph test, he asked to make a second statement to the police. He was again read his Miranda rights and made his statement. In the second statement, he stated that Dinisio Skinner, Collum's oldest son, told McFadden that Ariana had written on Dinisio's poster. McFadden confronted Ariana about the situation, and she denied it. McFadden picked up Ariana and shook her. While he was shaking Ariana, she was kicking and struggling; she flew out of his hands and struck her head on the television. McFadden gave this testimony at trial.
¶ 8. McFadden was tried and convicted of murder.

*368 ANALYSIS

I. WHETHER THE COURT ERRED IN REFUSING TO FURNISH AN EXPERT WITNESS FOR THE DEFENDANT.

II. WHETHER THE COURT ERRED IN REFUSING TO PROVIDE FUNDS FOR AN EXPERT.
¶ 9. McFadden admitted that he was responsible for Ariana's death, but he claimed that the death was an accident. Dr. Hayne, the forensic pathologist who testified for the State, testified that Ariana died of cerebral trauma, fractures to the skull, severe swelling, and brain stem herniation. He concluded that these injuries were caused by blunt force trauma. Dr. Hayne opined that the two fractures to the skull Ariana sustained would have required Ariana to have fallen at least fifteen feet. McFadden claims that there was a question as to the exact cause of death and that Dr. Hayne's medical report contained inconsistencies. Specifically, McFadden claimed that Ariana's hemorrhaged retinas were inconsistent with a cause of death through blunt force trauma but consistent with a death caused by suffocation or shaken baby syndrome.
¶ 10. McFadden intended to call as an expert Dr. John Lancon, an associate professor of neurosurgery at UMC. McFadden requested that Dr. Lancon be paid at the county's expense, claiming that he did not have the funds to hire Dr. Lancon himself. The circuit court held that McFadden had demonstrated his ability to obtain the funds to hire an expert witness because he had the funds to hire privately retained counsel. The court also held that McFadden had failed to demonstrate that the expert witness was necessary for his defense.
¶ 11. An indigent's right to an expert witness paid at the public's expense is "conditioned upon a showing that such expenses are needed to prepare and present an adequate defense." Ruffin v. State, 447 So.2d 113, 118 (Miss.1984). For this Court to overturn a trial court's denial of a request for expert assistance at public expense, we must find an abuse of discretion "so egregious as to deny due process rendering a trial fundamentally unfair." Fisher v. City of Eupora, 587 So.2d 878, 883 (Miss.1991).
¶ 12. There is no single test for determining whether the services of an investigator or an expert are necessary. Weatherspoon v. State, 732 So.2d 158, 160(¶ 7) (Miss.1999). However, this Court addresses the need for State funding on a case-by-case basis to determine whether a defendant was prejudiced by the denial of expert assistance to the extent that he or she was denied a fair trial. Townsend v. State, 847 So.2d 825, 829(¶ 13) (Miss.2003). Some factors to be considered include whether and to what degree the defendant had access to the State's experts, whether the defendant had the opportunity to cross-examine those experts, and lack of prejudice or incompetence of the State's experts. Id. This Court also considers to what extent the State's case depends on the State's expert and the risk of error in resolving the issue for which the expert is requested. Id.
¶ 13. In the present case, McFadden's counsel cross-examined Dr. Hayne, although he did not ask Dr. Hayne whether Ariana's injuries would be consistent with a death by suffocation or shaken baby syndrome. McFadden does not question Dr. Hayne's qualifications or competency. McFadden's attorney stipulated that Dr. Hayne was qualified to testify as a forensic pathologist. Dr. Hayne made himself available to McFadden's attorney, and McFadden's attorney spoke with Dr. *369 Hayne. Finally, the State's case against McFadden was not highly dependent on Dr. Hayne's conclusion that McFadden intended to kill Ariana. The State indicted McFadden for depraved heart murder, which requires that McFadden engaged in an act eminently dangerous to others but does not require a premeditated design to effect the death. Miss.Code Ann. § 97-3-19(1)(b) (Rev.2000). McFadden admitted that he shook a two-year-old girl so hard that she flew from his hands and hit the television. He also admitted that he was the only person who could have effected Ariana's death. Therefore, even if McFadden had produced an expert to testify that the cause of death was shaken baby syndrome or suffocation, McFadden would remain guilty of depraved heart murder.
¶ 14. The exact cause of Ariana's death was not an essential component of McFadden's defense. Therefore, there was no abuse of discretion in the trial court's denial of funds for an expert.

III. WHETHER THE COURT ERRED IN OVERRULING A MOTION FOR A CONTINUANCE
¶ 15. McFadden's indictment was filed on April 5, 2004. McFadden's counsel requested discovery on April 20, 2004. On May 6, 2004, McFadden's attorney requested a continuance, which the circuit court denied. The case was tried on May 10 and 11, 2004. McFadden's attorney claims that he was not given adequate time to review the discovery materials, prepare for trial, and consult with an independent medical expert.
¶ 16. The decision to grant or deny a continuance is left to the sound discretion of the trial court. Lambert v. State, 654 So.2d 17, 22 (Miss.1995). This Court does not reverse a denial of a continuance unless there is a showing of manifest injustice. Atterberry v. State, 667 So.2d 622, 631 (Miss.1995). In the present case, the judge denied the continuance because McFadden's attorney was hired in January and attended McFadden's habeas corpus hearing in March. McFadden's attorney stated that he had worked on the case every day since he received the State's discovery materials. On the day of the trial, the circuit court asked McFadden's attorney whether he was ready for trial, and the attorney announced that he was ready. The court did not abuse its discretion in denying a continuance.
¶ 17. THE JUDGMENT OF THE CIRCUIT COURT OF LEAKE COUNTY OF CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR. SOUTHWICK, J., NOT PARTICIPATING.