MAXWELL, J.,
for the Court:
¶ 1. Christopher Brandon challenges his conviction for the depraved-heart murder of a one-year-old boy. The young child, Xavier Staples, was in the sole care of Brandon when he was fatally injured. He died after the blood vessels between his brain and skull and behind his eyes were violently broken. While Brandon claimed Xavier had fallen off the bed and hit his head on a plastic toy, Xavier’s two treating physicians and the pathologist who performed the autopsy testified that Xavier’s injuries were too severe to have been caused by a short fall. They believed the immense force required to cause such extreme injuries was generated by Xavier having been severely shaken.
¶ 2. On appeal, Brandon insists his conviction should be reversed and rendered in his favor or a new trial should be granted because the trial judge denied him a publicly funded expert to challenge the State’s expert testimony. But we find any fault concerning Brandon’s failure to obtain state-funded expert testimony can be traced to his trial counsel’s actions and inactions, not the circuit judge’s denial of his last-minute request. And the proper context for considering potential prejudice from his attorney’s handling of the expert request is through his ineffective-assistance-of-counsel claim. However, because this issue is not fully developed in the record, we must deny relief on direct appeal, preserving Brandon’s right to raise this argument in a motion for post-conviction relief (PCR).
¶ B. Finding the trial judge did not abuse his discretion and the jury’s verdict is supported by the sufficiency and weight of the evidence, we affirm the judgment of conviction and sentence.
Background Facts
¶ 4. Just after midnight, on June 10, 2007, paramedics and law enforcement officers responded to a 911 call from Brandon, who reported that his girlfriend’s fifteen-month-old son, Xavier, had fallen off the bed and was unresponsive. Brandon had been watching Xavier while his girlfriend was away from their home. According to Brandon, he put Xavier in bed and went to the bathroom to turn on the shower. Brandon claimed he then heard a loud thud. When he returned to the bedroom to check on Xavier, Xavier was on the floor beside the bed, crying and gasping for breath. Brandon maintains that he picked the child up and tried to console him, but Xavier’s eyes rolled back in his head. Brandon explained that he took Xavier to the bathroom and ran cold water on his face in attempts to revive him. When this did not work, Brandon called 911.
¶ 5. But according to Xavier’s treating physicians, the child’s extensive head injuries indicated much greater force than a fall from the bed. Emergency-medicine physician Dr. Russell Knight treated Xavier when he arrived at the North Mississippi Medical Center. Dr. Knight testified that Xavier, who was not breathing and had no pulse, was bleeding inside his skull and behind his retina. Dr. Knight believed Xavier’s injuries required tremendous force — akin to a car wreck or a fall from a two-story building, not a fall from a two-and-a-half-feet-high bed. In his opinion, the injuries were consistent with shaken-baby syndrome (SBS). Because Xavier’s injuries did not square with Brandon’s story that Xavier had fallen from a bed, Dr. Knight contacted social services.
¶ 6. North Mississippi Medical Center did not have a pediatric-intensive-care unit, so Xavier was airlifted to Le Bonheur *131 Children’s Hospital in Memphis, Tennessee. Pediatric-intensive-care physician Dr. Mark Bugnitz treated Xavier when he arrived at Le Bonheur. Dr. Bugnitz testified that, upon arrival, Xavier’s heart, lungs, and brain were not functioning. Xavier was taken off life support and was declared brain dead. Like Dr. Knight, Dr. Bugnitz observed that Xavier had bleeding inside the skull and behind the retina. Dr. Bugnitz testified that it requires an “immense amount of force” to tear the veins inside the skull and that it was “impossible” for Xavier’s injuries to have been caused by falling from a bed and hitting a plastic toy. Instead, in his opinion, Xavier had experienced “abusive head trauma,” what experts now call SBS, likely caused by “severe shaking.” Because Xavier’s purported fall from a bed “was totally inconsistent with the injuries [Xavier] had,” Dr. Bugnitz also alerted social services.
¶ 7. Pathologist Dr. Steven Hayne performed Xavier’s autopsy. He too found Xavier had fatal bleeding behind the retina and on the surface of the brain. Dr. Hayne determined that the cause of death was SBS. Dr. Hayne testified that SBS occurs when a child is shaken without impacting the child’s head on a hard surface. The shaking generates a force “equivalent to ... a motor vehicle crash,” causing the brain and skull to move in different rotations, tearing the blood vessels between them. He described SBS as a violent death, listing in his autopsy the manner of Xavier’s death as “homicide.” But on cross-examination, Dr. Hayne acknowledged disagreement among pathologists on whether SBS is a valid cause of death. He noted that some pathologists believed that other circumstances could cause the same types of injuries as SBS.
¶ 8. The jury found Brandon guilty of depraved-heart murder — which is the “killing of a human being without the authority of law ... done in the commission of an act eminently dangerous to others and evincing a depraved heart, regardless of human life, although without premeditated design to effect the death of any particular individual!.]” Miss.Code Ann. § 97-3-19(l)(b) (Rev.2006). Brandon was sentenced to life imprisonment in the custody of the Mississippi Department of Corrections. The trial judge denied Brandon’s post-trial motion for a judgment notwithstanding the verdict or, alternatively, a new trial. Brandon timely appealed.[1]
Discussion
¶ 9. All of Brandon’s appellate issues relate to Brandon’s not having his own expert at trial. He argues the trial judge abused his discretion by: (1) denying his pretrial motion for a state-funded expert, (2) not sua sponte appointing Brandon a state-funded expert during trial or declaring a mistrial, and (3) not granting his post-trial motion for a new trial or a judgment notwithstanding the verdict.
¶ 10. We certainly do not turn a blind eye to Brandon’s claim that not having his own medical expert disadvantaged his defense. But we cannot find the lack of an expert was due to the trial judge’s misapplication of the law or abuse of his discretion. Brandon had not been declared indigent — a prerequisite to a state-funded expert. Further, Brandon’s counsel failed to show a concrete need for a state-funded expert. It appears Brandon’s failure to secure a state-funded expert possibly rests on his counsel’s failure to push for *132 Brandon’s indigent status and need for an expert, an issue we find more appropriate for a PCR motion, versus this direct appeal.
I. Denial of State-Funded Expert A. Pretrial Hearing
¶ 11. This case illustrates the problems that arise with last-minute requests on the heels of multiple continuances. Brandon’s trial had originally been set for February 2008 but was postponed until August 2009 because of Brandon’s seven motions for continuance. In the months leading to trial, the circuit judge became fully aware of the role expert testimony would play in Brandon’s trial. And during a hearing in May 2009, the trial judge pinned down both parties on the issue of expert witnesses. Before setting a trial date, the judge inquired about the availability of their experts, admonishing both sides to “make sure” their experts would be available for trial on August 4, 2009. Both sides were instructed to inform the court by May 18, 2009, if their experts had any conflicts with this trial date. At this same hearing, the judge also granted Brandon’s request to order the state crime lab to send its evidence “straight to [Brandon’s] pathologist.” But for some reason, Brandon’s counsel neglected to alert the judge that Brandon had not yet retained his own pathologist or other expert. Though Brandon’s counsel had filed a motion for expert funds in July 2008, she did not request the motion be heard until thirteen months later at an emergency telephonic hearing the Friday before trial was scheduled to begin on Monday.
¶ 12. At this hearing, the trial judge applied the correct legal test for state-funded experts — indigence, as well as a showing of concrete need — when denying Brandon’s motion. See Howell v. State, 989 So.2d 372, 389-90 (¶¶57, 60) (Miss.2008).

1. Indigence

¶ 13. “Whether [Brandon] was entitled to expert funds was contingent on whether [Brandon] was indigent.” Id. at 389 (¶ 57); see also McFadden v. State, 929 So.2d 365, 368 (1111) (Miss.Ct.App.2006) (discussing “[a]n indigent’s right to an expert witness paid at the public’s expense” (emphasis added)). The trial judge found Brandon was not indigent. And the record shows Brandon’s privately retained counsel never attempted to have him declared a pauper. We note that having private counsel does not in itself prohibit a defendant from being declared indigent. See Howell, 989 So.2d at 389-90 (¶¶ 57-60) (recognizing defendant’s declared indigent status was not altered by fact he had privately retained counsel serving pro bono). But there is an important distinction between Howell and this case. Here, unlike Howell, Brandon had not been declared indigent.
¶ 14. While during the eleventh-hour telephonic hearing, Brandon’s counsel asserted his indigence, citing difficulties in paying the expert’s retainer, she neither had Brandon submit an affidavit of his financial status nor appear at the hearing to testify about his financial condition. This lack of indigent status in itself was, under our supreme court’s precedent, a proper reason to deny state funds. See id.

2. Concrete Need

¶ 15. In addition to finding Brandon was not indigent, the trial judge found Brandon failed to show a concrete need why a state-funded expert must be provided. “An indigent’s right to an expert witness paid at the public’s expense is ‘conditioned upon a showing that such expenses are needed to prepare and present an adequate defense.’” McFadden, 929 *133 So.2d at 368 (¶ 11) (quoting Ruffin v. State, 447 So.2d 113, 118 (Miss.1984)). “Concrete reasons for requiring an expert must be provided by the accused.” Green v. State, 631 So.2d 167, 171 (Miss.1994) (emphasis added) (citing Hansen v. State, 592 So.2d 114, 125 (Miss.1991)). The question of whether an expert is necessary “must be committed to the sound discretion of the court to which the request for expenses is directed.” Ruffin, 447 So.2d at 118 (citation omitted).
¶ 16. The reason given for defense counsel’s request for a state-funded expert was that she wanted to challenge Dr. Hayne’s autopsy. The trial judge considered the factors from Townsend v. State, 847 So.2d 825, 829 (¶ 13) (Miss.2003), and found Brandon’s counsel had access to Dr. Hayne’s reports and the opportunity to fully cross-examine him at trial. See McFadden, 929 So.2d at 368 (¶¶ 12-13) (affirming denial of indigent defendant’s request for state-funded expert in part because defense counsel had access to State’s expert, Dr. Hayne, prior to trial and opportunity to cross-examine Dr. Hayne at trial). Under these circumstances, we cannot find the trial judge abused his discretion by denying Brandon’s request for a state-funded expert.

B. During Trial

¶ 17. Neither can we find, as Brandon urges, that once the pathologist testified at trial, the judge should have sua sponte halted the trial in its tracks and appointed Brandon a rebuttal expert. Brandon relies on Harrison v. State, 635 So.2d 894 (Miss.1994), to argue it was fundamentally unfair to allow the trial to continue without appointing Brandon a competing expert. But in Harrison, a death-penalty ease, the issue was undisclosed expert testimony by the State’s expert, and the fundamental unfairness was the inability to meet this surprise testimony. Harrison, 635 So.2d at 896, 898-900, 906. Here, Dr. Hayne’s testimony came as no surprise. Brandon was provided Dr. Hayne’s expert reports ahead of trial and given an opportunity to cross-examine him, as well as Dr. Knight and Dr. Bugnitz. Thus, we find Harrison inapplicable.
II. Assistance of Counsel

A. Lack of Defense Expert Witness

¶ 18. Having found no abuse of discretion by the trial judge, we instead find Brandon’s lack of his own expert hinges on questions surrounding his counsel’s performance. Brandon, who is represented on appeal by different counsel than at trial, raises the issue of his trial counsel’s effectiveness in his direct appeal. But to the extent Brandon argues his counsel’s actions or inactions led to his lack of an expert, we find this issue is not “based on facts fully apparent from the record” and, thus, cannot be addressed on direct appeal. M.R.A.P. 22(b); see Aguilar v. State, 847 So.2d 871, 878 (¶17) (Miss.Ct.App.2002) (citation omitted) (noting that it is “unusual” to address an ineffective-assistance claim on direct appeal because “we are limited to the trial court record in our review of the claim and there is usually insufficient evidence within the record to evaluate the claim”).
¶ 19. To prevail on a claim of ineffective assistance of counsel, Brandon must establish: (1) his attorney’s performance was deficient, and (2) the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). “To qualify as deficient, an attorney’s performance must fail to meet ‘an objective standard of reasonableness.’ ” Cooper v. State, 76 So.3d 749, 753 (¶ 17) (Miss.Ct.App.2011) (quoting Strickland, 466 U.S. at 688, 104 S.Ct. 2052). And “[f]or prejudice to exist, there must be a *134 ‘reasonable probability that, but for counsel’s [deficiency], the result of the proceeding would have been different.’ ” Id. at 754 (¶ 17) (quoting Strickland, 466 U.S. at 694, 104 S.Ct. 2052).
¶ 20. The trial record contains some evidence supporting Brandon’s claim of deficiency, but the record is not adequate to evaluate whether the alleged deficiencies were prejudicial. The record is simply not developed enough to determine whether Brandon would have been able to produce expert testimony rebutting the State experts’ conclusion that Xavier died of SBS.
¶ 21. Brandon attempted through post-trial motions to show what his proposed expert would have testified about, had Brandon’s counsel established his indigence and need for state funds to pay the expert. But the proposed expert report and the affidavits from additional experts were never made part of the trial record.[2] Rule 22(b) clearly states: “Issues which may be raised in post-conviction proceedings may also be raised on direct appeal if such issues are based on facts fully apparent from the record.” (Emphasis added). In Havard v. State, 928 So.2d 771, 786 (¶ 18) (Miss.2006), a direct appeal of a capital-murder conviction, the supreme court refused to consider affidavits that were not part of the trial record, submitted in support of one of the defendant’s claims. The supreme court was “not about to embark upon a journey of a carte blanche consideration of outside-the-record documents ... to decide issues on direct appeal” — especially when those documents had not been subjected to the same evidentiary standards as evidence submitted at trial. Id.
¶ 22. Following the supreme court’s directive, we too decline to consider expert reports and affidavits that are not part of the trial record. See id. Rather than address this claim on direct appeal, we find the more legally sound approach is to permit Brandon to establish through a PCR motion and hearing whether, but for his counsel’s alleged deficiencies, Brandon would have been able to present an expert whose testimony would have rebutted that of the State’s experts, supported his version of how Xavier’s injuries occurred, and created a reasonable probability of a different outcome.
¶23. “The Mississippi Supreme Court has stated that, where the record cannot support an ineffective assistance of counsel claim on direct appeal, the appropriate conclusion is to deny relief, preserving the defendant’s right to argue the same issue through a petition for post-conviction relief.” Aguilar, 847 So.2d at 878 (¶17) (citing Read v. State, 430 So.2d 832, 837 (Miss.1983)); see also Havard, 928 So.2d at 786 (¶ 18) (finding defendant had preserved his right to raise issue that was not fully developed on direct appeal in a future PCR proceeding). Thus, we deny relief while preserving Brandon’s right to fully develop the ineffectiveness issues through a PCR motion — with one exception.

B. Stipulation to Dr. Hayne’s Expert Qualifications

¶ 24. We do find Brandon has raised one claim of ineffective assistance *135 “based on facts fully apparent from the record.” M.R.A.P. 22(b). Brandon asserts that his lawyer was deficient for stipulating to Dr. Hayne’s qualifications as an expert in forensic pathology. We note that, because Brandon is represented by different counsel on appeal, Brandon had to present this issue in his direct appeal or otherwise waive this issue. See M.R.A.P. 22(b). Having considered the merits of this claim, we find it fails under both prongs of Strickland.
¶ 25. First, Brandon fails to show his counsel was deficient. Though Dr. Hayne has been rightly criticized for certain aspects of his work, our supreme court has made abundantly clear that it believes “Dr. Hayne is qualified to proffer expert opinions in forensic pathology[.]” Edmonds v. State, 955 So.2d 787, 792 (¶ 8) (Miss.2007). And it has consistently found Dr. Hayne qualified to render expert opinions in the field of forensic pathology in criminal cases. E.g., Moffett v. State, 49 So.3d 1073, 1110-11 (¶¶ 126-27) (Miss.2010); De-Henre v. State, 43 So.3d 407, 417 (¶40) (Miss.2010); Nelson v. State, 10 So.3d 898, 904 (¶ 26) (Miss.2009); Lima v. State, 7 So.3d 903, 907 (1117) (Miss.2009). Thus, Brandon’s counsel’s stipulation to Dr. Hayne’s qualifications was not objectively unreasonable. See Cooper, 76 So.3d at 755 (¶ 25).
¶ 26. Second, Brandon fails to show prejudice. Both of Xavier’s treating physicians testified Xavier’s injuries were caused by being violently shaken and not by a short fall from a bed. In particular, Dr. Bugnitz was emphatic that Xavier’s fatal bleeding did not match Brandon’s version of how Xavier was injured. Dr. Bugnitz, who co-authored a study refuting the theory that retinal hemorrhages may occur due to CPR, also discredited the defense’s suggestion that Xavier’s injuries from the fall were made more severe by Brandon performing CPR before the paramedics arrived. So even if Brandon’s counsel had succeeded in disqualifying or otherwise discrediting Dr. Hayne, we cannot find it reasonably probable that the outcome would have been different.
¶ 27. We therefore deny relief on the specific claim that Brandon’s trial counsel was ineffective for stipulating to Dr. Hayne’s qualifications, while preserving Brandon’s right to bring all other ineffective-assistance claims in a PCR motion.
III. Sufficiency and Weight of the Evidence
¶28. When we consider Brandon’s final argument that the jury’s verdict is against the sufficiency and overwhelming weight of the evidence, we are further convinced that the record is not fully developed to allow us to address Brandon’s claim that his counsel was ineffective for failing to secure an expert witness.
¶29. Brandon argues the trial judge should have granted his post-trial motion for a judgment notwithstanding the verdict or, alternatively, a new trial. A motion for a judgment notwithstanding the verdict tests the legal sufficiency of the evidence, while a motion for a new trial tests the weight of the evidence. Bush v. State, 895 So.2d 836, 843-44 (¶¶ 16, 18) (Miss.2005). Though Brandon’s post-trial motion advocated multiple grounds for relief, he advanced only one on appeal. Essentially, Brandon recasts his argument that the trial judge wrongly denied his request for a state-funded expert into a challenge to the sufficiency and weight of the evidence.
¶ 30. In doing so, Brandon relies on a report from the expert he claims he would have introduced to rebut the State’s pathologist, had he been granted state funds. Brandon argues this report questions the validity of the State’s expert testimony, showing it was insufficient to support the *136 jury’s verdict, and outweighs the contradictory expert testimony presented at trial. But this report is not a part of the trial record, so it is therefore outside of our appellate review. See McCullough, 47 So.3d at 1211 (¶ 18). And it certainly was not part of the evidence before the jury. As already discussed, the proper avenue to present this report and develop the record on the issue of prejudice is a PCR motion.

A. Sufficiency of the Evidence

¶ 31. “[I]n considering whether the evidence is sufficient to sustain a conviction,” we ask “whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Bush, 895 So.2d at 843 (¶ 16) (quoting Jackson v. Virginia, 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). Viewing the evidence in light most favorable to the State, we find a rational juror could have found the essential elements of depraved-heart murder beyond a reasonable doubt. See id.
¶ 32. Depraved-heart murder is the “killing of a human being without the authority of law ... done in the commission of an act eminently dangerous to others and evincing a depraved heart, regardless of human life, although without any premeditated design to effect the death of any particular individual[.]” Miss.Code Ann. § 97-3-19(l)(b). Brandon admitted that, when he arrived to babysit Xavier the afternoon preceding his death, Xavier was acting normally. Brandon was alone with Xavier from three that afternoon until Brandon called 911 in the middle of the night. Xavier’s two treating physicians and the State pathologist testified that Xavier’s injuries were inconsistent -with Brandon’s claim that Xavier had fallen off the bed, but consistent with the child being violently shaken. Thus, viewing the evidence in the light most favorable to the State, a reasonable juror could conclude that Brandon acted without regard to Xavier’s life by violently shaking him, resulting in his death.

B. Weight of the Evidence

¶ 33. When considering an objection to the weight of the evidence, we view the evidence in the light most favorable to the verdict and “will only disturb [the] verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Bush, 895 So.2d at 844 (¶ 18) (citation omitted). As Brandon cites no record evidence contradicting the jury’s finding of guilt, we find no reason to disturb the jury’s verdict.
¶ 34. Since the jury’s verdict is neither against the sufficiency nor the overwhelming weight of the evidence, we find no abuse of discretion in the trial judge’s denial of Brandon’s post-trial motion.
Conclusion
¶ 35. The apparent issue is not whether the trial judge abused his discretion but whether Brandon received constitutionally effective representation. Because the record is not fully developed to address this issue on direct appeal, we affirm Brandon’s conviction. Other than denying Brandon’s specific challenge to his attorney not contesting Dr. Hayne’s qualifications, we pass on the issue of ineffective assistance of counsel, allowing Brandon to re-raise his counsel’s alleged deficiencies and the prejudicial effect in a PCR motion.
¶ 36. THE JUDGMENT OF THE CIRCUIT COURT OF LEE COUNTY OF CONVICTION OF DEPRAVED-HEART MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND TO PAY A $2,000 FINE IS AFFIRMED. ALL COSTS OF *137 THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ROBERTS, CARLTON AND FAIR, JJ„ CONCUR. ISHEE, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. JAMES, J., NOT PARTICIPATING.

. Brandon’s appellate counsel, Robert W. Davis Jr. and Valena Beety, did not represent him at trial.

. This court denied Brandon's appellate counsel’s request to stay the briefing schedule and remand the case to the trial court for an evidentiary hearing to retroactively supplement these documents into the trial record. Consequently, we grant the State’s motion to strike any arguments based on these reports and the reports themselves, which were submitted only as "record excerpts,” but are not part of the trial record. See McCullough v. State, 47 So.3d 1206, 1211 (¶ 18) (Miss.Ct.App.2010) (finding appellant could not make documents part of the trial record "by simply attaching copies to his briefs filed with this Court”).