RANDOLPH, Presiding Justice,
concurring in result only:
¶ 44. I concur in result only, as I do not find that the trial judge misapplied the law or abused his discretion. I would hold that the trial judge acted within his discretion to refuse an untimely motion for expert funding and to refuse to grant an untimely motion for continuance. Yet we should not turn a blind eye to Isham’s claim that not having his own medical experts disadvantaged his defense. See Brandon v. State, 109 So.3d 128, 131 (Miss.Ct.App.2013). That disadvantage deprived Isham of a fair trial. Rarely, but if justice requires, this Court considers errors, whether assigned or not, where the record supports a plain-error analysis. Here, the record reveals that deprivation was due to the actions or inactions of Isham’s counsel, not trial-court error, for Isham’s counsel failed to timely seek funding and/or to timely seek a continuance.[2] What could and should have been raised additionally on appeal was whether Isham’s constitutional right to effective assistance of counsel was violated. See Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Accordingly, I would reverse and remand for a new trial, and the trial court should require expert funding, including necessary expenses to attend trial.
¶ 45. This conclusion is based on the clear and specific facts as presented in this record. Isham was denied a fair trial due to the failure of defense counsel to consult expert witnesses and to schedule their appearances, and if funds were necessary for further consultation and their appearances, to timely seek same.

Background

¶ 46. An investigation into both Isham and his wife, Mary Beth Isham, began almost immediately following Tommy’s need for emergency medical treatment in the spring of 2012. Mary Beth was represented by attorney Bill Bruce during the investigation and subsequent criminal pro *1086 ceedings. She also was represented by-attorney Duncan Ragsdale in a medical malpractice claim and suit related to Tommy’s treatment by his treating physicians. Bruce emailed the Hernando Police Department as early as July 13, 2012, pre-indictment, attaching a notice/demand letter from Ragsdale to one of the treating physicians. Ragsdale’s letter set forth reasons for Tommy’s appearance and injuries, contrary to those held by the treating physicians. Bruce further wrote that he would have an expert opinion from a radiologist, concluding that the injuries were not a result of abuse, within days, and it would be forwarded upon receipt. The record offers no indication that Bruce obtained or forwarded such an opinion(s). Isham and Mary Beth were indicted on August 15, 2012.[3]
¶ 47. Attorney Stacey Spriggs was appointed to represent Isham in September 2012. A joint motion for continuance for additional discovery was granted on January 4, 2013, resetting the trial date to June 24, 2013. A second continuance at Isham’s instance was granted on June 11, 2013, to retain experts and conduct additional discovery. The trial was reset for October 28, 2013.
¶ 48. On July 10, 2013, Bill Bruce filed his entry of appearance to serve as additional counsel for Isham. That same day, Bruce filed Isham’s separate Designation(s) of Expert Opinion, designating; Drs. Terry Moore and Franz Joseph Wip-pold.
¶49. The designations reveal the following:
A.
¶ 50. Dr. Moore, M.D., F.A.C.P., F.A.A.P., M.A.C.R., is a board-certified physician; professor of internal medicine, pediatrics, and molecular microbiology; and the immunology director, division of rheumatology and pediatric rheumatology at St. Louis University. Dr. Moore was expected to testify on ten topics, including but not limited to, his familiarity with the facilities available to the doctor treating Tommy; photographs and medical records of Tommy; numerous CT scans of Tommy; Systemic Lupus Erythematosus (SLE), diagnosis and treatment; CNS lupus, or CNS vasculitis; World Health Organization (WHO) criteria for diagnosing SLE; Antiphospholipid Antibody Syndrome; and tests for SLE/CNS vasculitis. The designation further reads that Dr. Moore was qualified to diagnose and treat SLE, CNS lupus, and CNS vasculitis. On May 29, 2013 (nearly one month before the second scheduled trial date of June 24, 2013) Dr. Moore reviewed the aforementioned, including Tommy’s immunoehemistry report and laboratory values. Dr. Moore opined that Tommy had sufficient criteria to diagnose SLE, however, the photographs indicate that it is likely Tommy had CNS vasculitis. Dr. Moore further opined that the Le Bonheur physicians’ treatment fell below the recognized standard of care of acceptable practice on May 2, 2012, by discharging Tommy without further tests, and fell below the requisite standard by failing to treat Tommy for his condition. The designation attached Dr. Moore’s Curriculum Vitae (CV) and noted that the review was not complete but would be supplemented when completed.
B.
¶ 51. Dr. Franz Wippold, II, M.D., was the chief of neuroradiology and a professor of radiology at the Mallinckrodt Institute of Radiology, Washington University School of Medicine in St. Louis, Missouri. He is a board-certified neuroradiologist. *1087 Dr. Wippold was expected to testify on twenty-one topics, including but not limited to, that he was familiar with the facilities and treatment available to the physicians treating Tommy; CT scans from April 30, 2012, May 1, 2012, May 12, 2012, and May 13, 2012; Tommy’s skeletal survey reports; immunochemistry reports; lab reports; subdural hematoma aging; subarachnoid hemorrhage; antinuclear antibody testing; SLE diagnosis and treatment; WHO criteria for diagnosing SLE; the timing of subdural bleeding in Tommy; and accidental and nonaccidental trauma. On May 29, 2013, (the same date as Dr. Moore’s review of the raw materials, nearly one month prior to the June trial date) Dr. Wippold reviewed the aforementioned, including photographs of Tommy, CT images, immunochemistry reports, skeletal survey reports, laboratory reports, and reference material. He opined that the April 30, 2012, and May 1, 2012, scans showed a normal brain with no bleeding and with soft-tissue swelling of the scalp consistent with lupus panniculitis (“LP”). He further opined that Tommy had seven of the eleven ACR criteria for diagnosing LP, and only four are required for diagnosis. Based on his review, Dr. Wippold opined that Tommy had SLE in April and May 2012. Lastly, he opined that Tommy’s skeletal survey reports indicated no evidence of skeletal trauma to support a diagnosis of nonaccidental trauma, and that Tommy’s symptoms were not caused by nonaccidental trauma. His opinion concluded that the bleeding shown on Tommy’s CT scans on May 12, 2012, were the result of SLE combined with minor accidental trauma occurring between May 8, 2012, and May 10, 2012. This designation likewise provided Dr. Wippold’s curriculum vitae and stated that the review was not complete and that disclosure would be supplemented upon completion.
¶ 52. The trial court heard pretrial motions on October 7, 2013, to determine inter alia the expert testimony that would be allowed at trial. The State sought a motion to compel reciprocal discovery, stating that the defense had provided incomplete reports of Isham’s experts. The State wanted either completed reports or a date certain when the reports would be finished. Defense counsel responded that he was “not aware of any further supplementation” from either expert. Defense counsel then stated:
I believe that the appropriate thing at this point would be just to tell both sides that they’re limited to what their experts have disclosed in written response; the Defense gets to use the experts they’ve designated and the opinions that were disclosed in written discoveny and that the State is limited to the same thing.
(Emphasis added).
¶ 53. Defense counsel then said that Isham was going to request that the State assist in paying for “further involvement by both Dr. Wippold and Dr. Moore.” The trial court stated that it would rule on the doctors’ testimony when they were offered as witnesses. The October 7 hearing concluded with no ore tenus or written motion for funding or continuance, and without a request for issuance of out-of-state subpoenas for either expert.
¶ 54. On Thursday, October 17, the defense filed a motion for the state to pay for expert fees and for continuance, months after the experts had reviewed Tommy’s medical records, photographs, images, etc., and months after they were designated as experts. The certificate shows service on the State by regular mail. Unlike prior motions filed by defense counsel and the State alike, no notice for a hearing date is in the record.
*1088 ¶ 55. The trial court heard the motion on Tuesday, October 22, 2018, six days before trial. Isham presented arguments but no evidence. Neither of the opinions in the designations were argued, nor was either designation offered to the trial court in support of the motion. (See supra 48). The State presented testimony from Leigh Mercer, witness coordinator, who testified that she had contacted the doctors upon request from the district attorney. Both were unavailable for October 28. Both told Mercer that they did not know much about the case, and had spoken with “defense counsel” only once, months prior to her telephone call. Defense counsel’s cross-examination of Mercer suggests strongly that neither doctor had spoken with Spriggs or Bruce, but rather with Ragsdale.
¶ 56. The trial court denied the motion based on the lack of concrete reasons provided by the defense to support its arguments. The trial court also expressed concern for the timeliness of the motion. The trial court relied on Brandon v. State, discussed infra. See Brandon, 109 So.3d 128. The trial cited Townsend v. State, in applying the appropriate three-factor test for determining whether Isham was entitled to a state-funded expert. Townsend v. State, 847 So.2d 825, 828 (Miss.2003) (citing Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985)). The trial court advised that Isham was required to demonstrate concrete reasons for needing a state-funded expert, citing McFadden v. State, 929 So.2d 365 (Miss.Ct.App.2006), Ruffin v. State, 447 So.2d 113 (Miss.1984), Green v. State, 631 So.2d 167 (Miss.1994), and Hansen v. State, 592 So.2d 114 (Miss.1991). The trial court noted that, “[a]s a matter of fact, [it had] not been presented with any statements that these experts could even opine anything that would be beneficial to the defendant in this case.” Defense counsel failed to offer and ask the trial court to consider Isham’s designation, referred to supra (48, A-B), to demonstrate a concrete reason. Defense counsel further offered no alternative dates that the two experts would be available to testify-

Analysis

¶57. In this appeal, the issue raised: trial-court error in refusing to provide Is-ham funds to hire an expert witness with regard to the nature of and cause of Tommy’s injuries, otherwise could be stated as follows: Isham was denied the opportunity to present the testimony of two experts critical to his defense. However, as set forth supra, the experts already had been engaged, had responded regarding the nature of and cause of Tommy’s injuries, already had reviewed extensive evidence related to causation, held opinions in direct contrast to the State’s case, and had been designated to testify. The crux of the trial court’s ruling was not funding, but rather, was counsel’s failure timely and correctly to seek relief. Isham’s plea was not only untimely, counsel failed to provide the trial court with concrete reasons for funding or to explain the experts’ unavailability. Neither defense counsel requested subpoenas for either witness or sought funding for either expert, who had been designated more than three-and-a-half months prior to trial.
¶58. Based on the preceding facts, it would be a manifest miscarriage of justice for this Court not to apply the plain-error doctrine, for an ineffective-assistanee-of-counsel claim is fully developed in the record before us, unlike that found by the Brandon court. See Brandon, 109 So.3d 128.
¶ 59. “For the plain-error doctrine to apply, there must have been an error that resulted in a manifest miscarriage of justice or ‘seriously affectfs] the fairness, in *1089 tegrity or public reputation of judicial proceedings.’ ” Conners v. State, 92 So.3d 676, 682 (Miss.2012) (quoting Brown v. State, 995 So.2d 698 (Miss.2008) (quoting United States v. Atkinson, 297 U.S. 157, 160, 56 S.Ct. 391, 80 L.Ed. 555 (1936))). Under the plain-error doctrine, this Court may sua sponte raise issues not properly raised by the defendant when defendant’s right to a fair trial has been violated. See Conners, 92 So.3d at 682 (citing Smith v. State, 986 So.2d 290, 294 (Miss.2008) (quoting Debrow v. State, 972 So.2d 550, 553 (Miss.2007))). It is the duty of the defendant and counsel to review the record carefully and then to seek relief accordingly. That did not occur here.
The benchmark for judging any claim of ineffectiveness [of counsel] must be whether counsel’s conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). The test is two pronged: The defendant must demonstrate that his counsel’s performance was deficient, and that the deficiency prejudiced the defense of the ease. Strickland, 466 U.S. at 687, 104 S.Ct. at 2064; Washington v. State, 620 So.2d 966 (Miss.1993). This requires showing that counsel’s errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
Havard v. State, 86 So.3d 896, 903-04 (Miss.2012) (citations omitted).
¶ 60. Ineffective-assistance-of-counsel determinations are decided on a case-by-case basis. Williams v. Taylor, 529 U.S. 362, 391, 120 S.Ct. 1495, 146 L.Ed.2d 389, L.Ed.2d 389 (2000) (citation omitted). Funding, vel non, also must be determined on a case-by-case basis. Lowe v. State, 127 So.3d 178, 181 (Miss.2013). Thus, both issues require fact-specific scrutiny.
¶ 61. There must exist a “reasonable probability” that, without counsel’s errors, a different result would have been reached. Williams, 529 U.S. at 391, 120 S.Ct. 1495 (quoting Strickland, 466 U.S. at 694, 104 S.Ct. 2052). Also, there must be “A reasonable probability that at least one juror would have struck a different balance.” Davis v. State, 87 So.3d 465, 474 (Miss.2012) (citing Wiggins v. Smith, 539 U.S. 510, 537, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003)).
¶ 62. In Davis v. State, this Court held counsel ineffective for failing to contact and interview key defense witnesses where the record was certain that counsel’s actions were not tactical. Davis, 87 So.3d at 469. This Court instructed that an in-depth analysis is not required to reach the conclusion that “... an attorney who never seeks out or interviews important witnesses ... was not engaging in trial strategy.” Davis, 87 So.3d at 469. In Johns v. State, this Court similarly provided “[t]he decision not to interview witnesses, particularly your own, cannot be considered an effective choice. When counsel makes choices of which witnesses to use or not to use, those choices must be based on counsel’s proper investigation.” Johns v. State, 926 So.2d 188, 196 (Miss.2006). Although “[t]he line between effective and ineffective assistance of counsel is not always clear[,]” it is clear in today’s case. See Davis, 87 So.3d at 470.
¶ 63. Here, counsel’s failure to contact the witnesses, secure their presence for trial, request subpoenas, request funding, or timely request a continuance cannot be deemed tactical. As mentioned supra, Is-ham had two expert witnesses to refute the State’s ease, albeit experts and opinions that were obtained through the efforts of others. These were two expert witnesses who already had been interviewed and had been provided materials and had rendered opinions. The record is void of *1090 any evidence exhibiting that either of Is-ham’s counsel talked to the experts, confirming their opinions and determining their availability to testify the week of October 28-30. The record offers clear evidence to the -contrary, for the experts had not been informed of the trial date, no subpoenas were requested or issued, and no funds had been requested to secure their presence until the eve of trial. The only evidence provided to the trial court regarding experts’ fees and availability was produced by the State’s witness coordinator, not Isham’s counsel.
¶ 64. Isham likens this case to Lowe v. State; however, the facts before us are entirely dissimilar. Lowe, 127 So.3d at 178. In Lowe, a defense expert was needed to “refute the State expert’s allegations!;,]” and to enable Lowe to' question the State’s expert effectively. Lowe, 127 So.3d at 183. Further, the State’s expert provided the sole testimony connecting Lowe to the crime. Id. We concluded that Lowe was denied the opportunity adequately to prepare his defense. Id. at 184.
¶ 65. Although not relied on by Isham, the majority also cites Brown v. State. Brown v. State, 152 So.3d 1146 (Miss.2014). However, Brown is distinguishable. In Brown, the trial court failed to conduct an indigency hearing before denying Brown’s timely request for funding, which had been filed nearly two years before trial, ruling it had no authority to allow funds for a defendant who had not been found indigent. Brown, 152 So.3d at 1165. Additionally, Brown was granted a new trial for unsupported limitations on cross-examination of both testifying doctors. Id. at 1169. Here, it is undisputed that Isham was indigent, that he had experts who had reviewed the “raw material” and were willing to refute evidence, and that he had filed a request for funding/continuance. Isham also was allowed and conducted a liberal cross-examination of the State’s witnesses. Therefore, Isham’s factual scenario is markedly distinguishable from the facts in Brown.
¶ 66. In the case sub judice, Isham already had identified witnesses, who had been furnished “raw materials” (medical records, tests, photos, etc.), who already had formulated opinions “to refute” the treating physicians, combined with Ragsdale’s point-by-point outline for effective cross-examination of the treating physicians. Isham had not one, but two, experts prepared to refute the experts that the State was calling. Lowe and Brown had no one. Defense counsel’s cross-examination of the medical experts on Tommy’s medical records, reports, tests, and peer-reviewed publications and treatises, demonstrates that he was well-qualified to examine Tommy’s treating physicians. Lowe and Brown were not similarly prepared. Isham’s disadvantages arose because defense counsel had failed to arrange for Isham’s experts to appear at trial and testify, not because of trial-court error.
¶ 67. On appeal, Isham argues unconvincingly that he was denied the opportunity to consult with the doctors identified in his designation and therefore to prepare and present his defense. The record is devoid of evidence to support such an argument. The record actually belies this argument. The record confirms that Is-ham possessed the “raw materials” needed for his defense. His counsel had an outline of the specific failures of the treating physicians, and defense counsel possessed opinions from both Drs. Moore and Wip-pold, who already had reviewed Tommy’s medical records, photos, etc. All Isham lacked was their presence at trial (best achieved by agreement or a subpoena). The record does not reveal any attempt by defense counsel to secure their attendance. As late as October 7, defense counsel told the trial court that both experts would *1091 testify at trial, but at that time or before, defense counsel failed to request funds or subpoenas. Further, as mentioned supra, defense counsel’s cross-examination of the witness coordinator on October 22 indicates that neither of Isham’s trial counsel actually had spoken with these experts. These facts clearly distinguish the dilemma facing Lowe and Brown. Lowe, 127 So.3d at 178; Brown, 152 So.3d at 1146.
¶ 68. Some of the critical facts identified in today’s case can be found in Brandon v. State, yet it also has its clear distinctions. Brandon, 109 So.3d at 128. In Brandon, the defendant’s counsel filed a motion for expert funds in July 2008 but did not request a hearing on the motion until thirteen months later, the Friday before trial was to begin on Monday. Brandon, 109 So.3d at 132. Similarly, Brandon was denied funding for an expert witness because he failed to provide concrete reasons for needing the expert. Id. The Court of Appeals found that Brandon’s motion was properly denied due to the “actions and inactions” of his counsel, “not the circuit judge’s denial of his last-minute request[,]” finding that the trial judge did not abuse his discretion, and any relief should be pursued under an ineffective-assistance-of-counsel claim, which could be developed fully in his motion for post-conviction relief. Id. at 130. The overriding distinction is that the record in today’s case requires no further development of facts.
¶ 69. In the case sub judice, the trial court ruled that it would not grant Isham state funding to hire the aforementioned experts because the defense had failed to provide concrete reasons to support its argument and because of the untimeliness of the motion. The record supports both rulings and evidences no abuse of discretion. The trial court stated its concern over defense counsel’s failure to bring this issufe for hearing sooner. The trial court expressed its concern over granting another lengthy continuance, and further that the court had not been provided alternative dates when the experts would be available. The trial court stated it had yet to be presented with any statements from the experts, ie., a concrete reason for continuance. “The decision to grant or deny a motion for a continuance is within the sound discretion of the trial court and will not be grounds for reversal unless shown to have resulted in manifest injustice.” See Simmons v. State, 805 So.2d 452, 484 (Miss.2001) (citations omitted).
¶ 70. Based on the extraordinary facts of this case and the failure of Isham’s counsel to undertake the steps necessary to put before the jury testimony refuting the State’s causation theory, we conclude that a reasonable probability exists for a different outcome. Assuredly, a fair trial was not had, but not because of trial-court error. I agree that this case should be reversed and remanded for proceedings consistent with this opinion.
CHANDLER AND PIERCE, JJ., JOIN THIS OPINION.

. Isham is represented by separate counsel on appeal.

. Mary Beth’s charges were nolle prossed by the district attorney's office in May 2013.